

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF OREGON

**PETER C. McKITTRICK**
BANKRUPTCY JUDGE

1001 S.W. FIFTH AVENUE, # 700
PORTLAND, OREGON 97204
(503) 326-1536

M. CAROLINE CANTRELL
LAW CLERK

BETHANY COLEMAN-FIRE
LAW CLERK

TONIA McCOMBS
LAW CLERK

January 7, 2019

Susan Szanto
11 Shore Pine
Newport Beach, CA 92657

Stephen P. Arnot (via ECF)
Williams, Kastner, Greene & Markley
1515 SW Fifth Avenue, Suite 600
Portland, OR 97201-7967

Re:     <u>In re Peter Szanto</u>, Case No. 16-33185-pcm7
        Claim No. 14

Dear Mrs. Szanto and Mr. Arnot:

In February of 2018, debtor Peter Szanto (Debtor) filed a proof of claim (the Claim) on behalf of his wife, Susan Szanto (Mrs. Szanto). The chapter 7 trustee (the Trustee) objected to the Claim, thus initiating a contested matter. On October 24, 2018, the Court held a final, evidentiary hearing on the Claim.[1] For the reasons set forth below, I will enter an order sustaining the Trustee's objection and disallowing the Claim.

## Background

According to the proof of claim form filed by Debtor, Mrs. Szanto has an unsecured, priority claim in the amount of $3,961,438. Debtor asserted that the Claim is entitled to priority treatment because it is a domestic support obligation (DSO) under 11 U.S.C. § 507(a)(1). The only documentation attached to the proof of claim is a Community and Quasi-Community Property Declaration form (the CP Declaration) that purports to bear Mrs. Szanto's signature.

---

[1]     All exhibits referenced in this letter are those introduced and admitted into evidence at the October 24, 2018, hearing.

The CP Declaration was filed in California state court postpetition on February 26, 2018.[2]

      In the CP Declaration, Mrs. Szanto asserts a 50% community property interest in various assets, which, according to the CP Declaration, have a total value of $7,922,875. Exhibit 1. Those assets include real estate in Newport Beach, California (the "Real Estate") and a "Claim Against Victor Szanto, et al." (the "Lawsuit"). <u>Id.</u> at p. 5. The Trustee has abandoned the Real Estate and Lawsuit, which means that those assets no longer are property of the estate. <u>See</u> Docs. 562; 443. Because the Real Estate and Lawsuit are not property of the estate, they cannot form the basis for a claim against the estate. Therefore, to the extent the Claim is based on Mrs. Szanto's alleged community property interest in the Real Estate and Lawsuit, it will be disallowed. The total monetary amount claimed by Mrs. Szanto attributable to those two assets is $3,100,000.

      The trustee objected to the Claim, Doc. No. 422, disputing that it is entitled to priority treatment and recommending that it be disallowed in full. The Trustee states in the objection that Mrs. Szanto and Debtor are parties to a 2001 premarital agreement (the Premarital Agreement) in which they agree to acquire only separate and no community property. The trustee observes, accurately, that Debtor did not disclose any community property in his schedules. In fact, Debtor stated in his original schedules, under penalty of perjury, that he and Mrs. Szanto "are parties to an ante-nuptial/pre-marital agreement" in which they agreed to neither produce nor accumulate community property and that he and Mrs. Szanto have no joint or community property of any type. Doc. 20, Addendum to Form 106H. Debtor also failed to disclose the existence of any community property in the schedules he filed after conversion of his case from chapter 11 to 7. <u>See</u> Doc. 318.

      Mrs. Szanto filed a response to the Trustee's objection, arguing that the Claim is entitled to priority treatment and that the Premarital Agreement is unenforceable. Doc. 448.

      The Trustee filed a reply and declaration in support of the reply (collectively, "the Reply"). Docs. 458; 459. Because LBR 9013-1(c)(2)(A) provides that no replies may be filed without the court's prior written permission in chapter 7 cases and the Trustee did not seek permission to file the Reply, I have not considered it in reaching my decision to disallow the Claim.

Analysis

I. <u>The Claim is disallowed pursuant to Fed. R. Civ. P. 41(b).</u>

      On August 7, 2018, the Court issued a Rescheduled Notice of Hearing on the Claim, setting the final, evidentiary hearing for October 24, 2018 (the Final Hearing). Doc. 544. Thereafter, the Court entered an Amended Scheduling Order (the Scheduling Order). Doc. 548. The Scheduling Order requires that Mrs. Szanto appear in person at the Final Hearing and

---

[2] There is currently pending in a California state court a dissolution of marriage action filed by Mrs. Szanto in February of 2013. Exhibit 3, p. 1. According to the court docket in that action, there was no activity in the case from May of 2014 until February of 2018, when Mrs. Szanto filed the CP Declaration. <u>Id.</u> at p. 2.

provides that her "failure to appear in person at the Final Hearing may result in disallowance in full of her claim." Scheduling Order, ¶ 5. I had previously explained to Mrs. Szanto, at a hearing held on May 30, 2018, the necessity of her appearing in person at the final hearing. I also explained that she would need to file a motion if she wanted to reschedule the Final Hearing. Mrs. Szanto stated that she understood.

On October 23, 2018, at 1:18 a.m., Debtor emailed my courtroom deputy stating that "it is doubtful" that Mrs. Szanto will appear at the final hearing because preparing for the Final Hearing had caused Mrs. Szanto to have a physical and emotional collapse on the morning of October 21. Doc. 605.

On October 23, 2018, I had placed on the docket a letter informing the parties that the Final Hearing would proceed as scheduled for the reasons set forth in that letter. See Doc. 605. The letter states, in pertinent part:

> As a threshold matter, Debtor's correspondence does not request that the Final Hearing be set over and, in any event, I have previously told Debtor that he does not represent, and may not speak for, Mrs. Szanto in this contested matter. Moreover, the Scheduling Order provides:

>> Any request for any modification of this order must be by written motion supported by an affidavit stating sufficient facts demonstrating good cause, appropriate use of prior time and that the extension/continuance was requested at the earliest possible time, and no later than three business days before the date for which the extension is sought. The affidavit or declaration supporting any motion to modify this amended scheduling order shall authenticate and include exhibits or documents supporting the factual contentions to the extent such documents or exhibits exist. Any motion not timely filed or adequately supported by evidence may be denied without hearing.

> Scheduling Order, ¶ 4. I will not set over the Final Hearing because Mrs. Szanto failed to file a motion requesting a setover in accordance with the terms of the Scheduling Order set out immediately above.

Doc. 605. After the letter was docketed, I instructed my courtroom deputy to send it via email to the parties and to Debtor and also to call the parties and Debtor and inform them of the fact that the Final Hearing would not be delayed as a result of Debtor's email correspondence.

Mrs. Szanto did not file a motion to setover the Final Hearing and failed to appear. I conducted the hearing as scheduled. The Trustee testified and I admitted into evidence the Trustee's exhibits numbered 1-9.[3]

---

[3] The Scheduling Order at ¶ 2 set a deadline of October 17, 2018, for the parties to file evidentiary objections. Mrs. Szanto did not file evidentiary objections to the Trustee's exhibits.

Rule 41(b) provides that if a "plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it." Rule 41 is made applicable to contested matters by Fed. R. Bankr. P. 9014. A trial court may act *sua sponte* in dismissing for failure to prosecute. In re Osinga, 91 B.R. 893, 894 (9th Cir. BAP 1988). In making its decision, a court should consider:

> (1) the public's interest in expeditious resolutions of litigation, (2) the court's need to manage its docket, (3) the risk of prejudice to defendants, (4) the public policy favoring disposition of cases on their merits, and (5) the availability of less drastic sanctions.

Id. I have considered the above referenced factors and conclude that the Claim should be disallowed under Rule 41(b).

At the time of the Final Hearing, this bankruptcy case was well over two years old and had existed as a chapter 7 case for almost a year. There is a public interest in the expeditious resolution of litigation and that interest is amplified in the context of a chapter 7 bankruptcy case. The Trustee clearly was prejudiced by Mrs. Szanto's failure to appear at the Final Hearing. He intended to call Mrs. Szanto as a witness, see Doc. 594, and the inability to examine her under oath impaired the Trustee's ability to prosecute his claim objection. Mrs. Szanto was warned multiple times that she needed to appear in person at the Final Hearing and that if she failed to do so, her claim could be disallowed. She also was warned that if she wanted the Final Hearing to be set over, she would need to file a motion requesting that relief.

The Scheduling Order set a deadline of October 10, 2018, for Mrs. Szanto and the Trustee to exchange and submit to the Court exhibits, and to file exhibit and witness lists. Scheduling Order, ¶ ¶ 1; 3. The Scheduling Order explicitly states that "[e]xcept for good cause shown, no exhibits will be received in evidence at the Final Hearing unless presented in accordance with this order" and that "[a]ny witness whose name is not included on a party's witness list will not be allowed to testify, except for good cause shown or solely for the purpose of impeachment." Id. Mrs. Szanto did not submit any exhibits or file a witness list, a fact that tends to indicate she did not at that time intend to appear at the Final Hearing.

As I said in my October 23 letter, "Mrs. Szanto has chosen to appear *pro se* in this matter and her decision to do so does not excuse her failure to comply with the Court's order or excuse her responsibility to prosecute her claim. In general, a party who proceeds with litigation *pro se* 'does so with no greater rights than a litigant represented by a lawyer.' Bias v. Moynihan, 508 F.3d 1212, 1219 (9th Cir. 2007)." Doc. 605.

For the reasons explained above, I find that disallowance of the Claim under Rule 41(b) is warranted. However, for the reasons that follow, I also conclude that the Claim should be disallowed on its merits. Moreover, to the extent Mrs. Szanto has a claim in this case, and I do not believe she does, that claim is not entitled to priority treatment.

II. The Claim is disallowed on its merits.

There are a number of problems with the Claim, all of which taken together, lead me to conclude that the Trustee's objection should be sustained and the Claim disallowed on its merits.

Rule 3001 provides that a "proof of claim executed and filed in accordance with these rules shall constitute prima facie evidence of the validity and amount of the claim." Fed. R. Bankr. P. 3001(f). The Rule 3001(f) evidentiary presumption of a prima facie valid claim operates to shift to the objecting party the burden of going forward with proof. In re Garvida, 347 B.R. 697, 706 (9th Cir. BAP 2006). Once the objecting party meets its burden of going forward with evidence to rebut the presumption, the ultimate burden of proof is on the claimant. Id.

As a threshold matter, I conclude that the Claim is not entitled to an evidentiary presumption of validity. "A claim that is not regular on its face does not qualify as having been 'executed and filed in accordance with'" the Federal Rules of Bankruptcy Procedure, in which case the evidentiary presumption of validity does not apply. Garvida, 347 B.R. at 706 n. 7 (quoting Rule 3001(f)). It was Debtor, not Mrs. Szanto, who executed and filed the Claim. Debtor's execution and filing of the Claim is inconsistent with his earlier sworn statements in this case that he and Mrs. Szanto have no community property. Therefore, the Claim is not entitled to a presumption of validity. However, even if I assume that the Rule 3001(f) evidentiary presumption does apply, and I do not believe that it does, the Trustee rebutted it and Mrs. Szanto failed to satisfy her burden of proving the validity of the Claim.

The Trustee introduced into evidence the Premarital Agreement, which states that Debtor and Mrs Szanto:

> agree that all accumulation, salary or other benefit, which may accrue during their marriage, which would otherwise be community property, shall retain the character of separate property. Neither party will attempt to create community property in this marriage. Nor shall any property nominated community property be such. . . .

> All property, benefit, money, or other increase of whatever nature that shall accrue to either [Mrs. Szanto or Debtor], through their individual efforts, shall be and shall remain the separate property of the party through whose efforts it was earned or accrued. . . .

> All of the separate assets of each party at the time of the marriage shall remain separate. . . . No act of commingling of assets, nor any other act of joint usage or joint ownership between these parties shall result in the creation of any community property. No act or action by either of these parties shall create any community estate between these parties or as to this marriage.

Exhibit 5, pages 4-5. The Premarital Agreement was executed in the presence of a notary on June 4, 2001, and bears a stamp indicating that it was recorded in Orange County, California on June 7, 2001. Id. at p. 1. Mrs. Szanto admitted that in 2001, she and Debtor signed and had recorded a marital agreement. Exhibit 4, p. 2.

The characterization of property as either community or separate is determined by state law. In re Mastro, 465 B.R. 576, 602 (Bankr. W.D. Wash. 2011). Under Cal. Fam. Code § 1612(a)(1), parties to a premarital agreement may contract regarding "the rights and obligations of each of the parties in any of the property of either or both of them whenever and wherever

acquired or located." The sole basis of the Claim is Mrs. Szanto's alleged community property interest. The problem for Mrs. Szanto is that under the plain terms of the Premarital Agreement, Debtor and Mrs. Szanto accumulated no community property. It follows, therefore, that the Claim should be disallowed.[4]

A premarital agreement can be amended or revoked after marriage "only by a written agreement signed by the parties." Cal. Fam. Code § 1614. The CP Declaration does not operate to revoke the Premarital Agreement for at least two reasons. First, the CP Declaration is not an agreement signed by both parties to the marriage; it bears only one signature purporting to be Mrs. Szanto's. Second, the characterization of property as separate or community is determined as of the petition date. In re McCoy, 111 B.R. 276, 279 (9th Cir. BAP 1990), and the CP Declaration was signed and filed in state court after the petition date.[5]

Mrs. Szanto argued in her response to the Trustee's objection that "[n]o premarital agreement ever became effective" for various reasons. Exhibit 2. She included in her a response a declaration in which she restates those arguments. Id. Under California law, a court determining the enforceability of a premarital agreement must apply the law in existence on the date the agreement was executed. In re Marriage of Melissa, 212 Cal. App. 4th 598, 611(Cal. Ct. App. 2012). When Mrs. Szanto and Debtor executed the Premarital Agreement in 2001, a premarital agreement was enforceable unless it was not voluntary or was unconscionable. Cal. Fam. Code § 1615. The statute in effect at the time placed the burden of proof on the party seeking to block enforcement of a premarital agreement. In re Marriage of Cadwell-Faso & Faso, 191 Cal. App. 4th 945, 956 (Cal. Ct. App. 2011). Mrs. Szanto failed to meet her burden of proving that the Premarital Agreement is unenforceable. Her failure to appear at the Final Hearing deprived the Trustee of his ability to test her contention that the Premarital Agreement was not enforceable and the Court of the opportunity evaluate her credibility. By scheduling an evidentiary hearing and repeatedly telling Mrs. Szanto that she needed to appear in person at the Final Hearing, the Court made it perfectly clear to Mrs. Szanto that the unsupported statements in her reply to the Trustee's objections were insufficient establish that the Premarital Agreement is unenforceable.

Even if Mrs. Szanto had shown that the Premarital Agreement is unenforceable, which

---

[4]     Even if Mrs. Szanto did have a community property interest in some assets comprising Debtor's bankruptcy estate, the full value of those assets likely would be included in Debtor's bankruptcy estate and subject to the Bankruptcy Code's provisions on the distribution of estate assets. See § 726. With very limited exceptions, each spouse has an equal right to manage community property under California law. In re Maynard, 264 B.R. 209, 214 (9th Cir. BAP 2001). The filing of a bankruptcy petition creates an estate, which includes all community property in which the debtor has sole, equal, or joint management and control. § 541(a)(2)(A). "[A]ll community property not yet divided by a state court at the time of the bankruptcy filing is property of the bankruptcy estate." In re Mantle, 153 F.3d 1082, 1085 (9th Cir. 1998). Mrs. Szanto does not argue, and it is clear from the state court docket, that the state court had not made a division of property in the pending dissolution action on the bankruptcy petition date. See Exhibit 3.

[5]     Conversion does not affect the date of the commencement of a case, with exceptions not relevant here. § 348(a).

she did not do, she still did not meet her burden of establishing that she has a claim against the estate for the amount set forth in the Claim.  Mrs. Szanto states in her response to the Trustee's claim objection:

> I am entitled to an undivided ½ interest in the Bankruptcy Estate of Peter Szanto as my part of the Community Property Estate that is represented and encompassed by my marriage to Peter Szanto.

Exhibit 2, p. 4.  Mrs. Szanto cites, and I am aware of, no authority for the proposition that a nondebtor spouse has a community property interest in the undifferentiated whole of a chapter 7 debtor's bankruptcy estate.  Instead, a nondebtor spouse who files a claim in a bankruptcy case based on his or her alleged community property interest, must establish a community property interest in specific assets comprising the debtor's bankruptcy estate.  Mrs. Szanto entirely failed to make such a showing.

The only documentation attached to the Claim is the CP Declaration.  Other than for the abandoned property discussed above (the Real Estate and Lawsuit), the CP Declaration does not identify any specific asset in which Mrs. Szanto claims a community property interest.  The CP Declaration merely states that Mrs. Szanto has a 50% interest in general categories of assets acquired on "various" dates.  <u>See</u> Exhibit 1, pages 4-6.

It is true that absent a statute to the contrary, there is a rebuttable presumption under California law that property acquired during a marriage is community property.  <u>In re Brace</u>, 908 F.3d 531, 537 (9th Cir. 2018).   "The major exceptions to the basic community property rule are those relating to separate property."  Cal. Fam. Code § 760, Law Revision Commission Comments.  Unless a statute provides otherwise, "neither spouse has any interest in the separate property of the other."  Cal. Fam. Code § 752.

> (a) Separate property of a married person includes all of the following:
>
> > (1) All property owned by the person before marriage.
> >
> > (2) All property acquired by the person after marriage by gift, bequest, devise, or descent.
> >
> > (3) The rents, issues, and profits of the property described in this section.

Cal. Fam. Code § 770.  "In California, classification of property as community or separate property depends on the time of its acquisition."  <u>Brace</u>, 908 F.3d at 537.  Mrs. Szanto does not assert in the Claim or her response to the Trustee's claim objection, much less offer any evidence, that any of the estate assets in which she allegedly has a community property interest were acquired during her marriage to Debtor.

For the reasons set forth above, I will sustain the Trustee's objection to the Claim and disallow it in full.

III.  The Claim, to the extent it exists, is not entitled to priority treatment.

Because I have determined that the Claim will be disallowed in its entirety, there is no claim entitled to any treatment, priority or otherwise, in this chapter 7 case.

Even if Mrs. Szanto did have a claim in this case, she has not shown that it would be entitled to priority treatment.  A creditor bears the burden of proving that her claim is entitled to priority treatment.  In re Mid-Region Petroleum, 1 F.3d 1130, 1132 (10th Cir. 1993).

Mrs. Szanto's response to the Trustee's objection to the Claim states:

Susan Szanto's claims have priority in this case pursuant to 11 USC 507(a)(1)(A), because debtor's Bankruptcy Estate's Assets are necessary to secure all of debtor's domestic support obligations to Susan Szanto.

Exhibit 2, p. 1.  Section 507(a)(1)(A) creates a first priority for DSOs that are owed to or recoverable by a spouse on the petition date.  A DSO is a debt that is "in the nature of alimony, maintenance, or support[.]"  § 101(14A)(B) .  Mrs. Szanto does not argue, much less show, that, on the petition date, she was owed a debt that is in the nature of alimony, maintenance or support.  Therefore, she has not met her burden of showing that any claim she has in this case is entitled to priority treatment.

Conclusion

For the reasons stated above, I will enter an order disallowing the Claim.

Sincerely,

PETER C. MCKITTRICK
Bankruptcy Judge

cc:   Susan Szanto
      Gary Blacklidge (via ECF)