Peter Szanto    949-887-2369
11 Shore Pine
Newport Beach CA 92657

# U.S. Bankruptcy Court

### District of Oregon
1001 SW 5th Ave #700 Portland, OR 97204 (503) 326-1500

| | |
|---|---|
| **In Re Peter Szanto, Debtor** | **# 16 –bk-33185 pcm7**<br><br>**DEBTOR'S Response**<br>**To Relief from Stay Motion**<br>**(Docket Entry 671)**<br><br>Form 720.80 attached as EXHIBIT C<br><br>**HEARING March 28, 2019 – 1PM** |

May it please this Honorable Court. Comes now debtor responding to JPMorganChase's application for relief from stay (DE 671).

## 1. FACTS

JPMorganChase (Chase) seeks relief from the 11 USC 362 stay upon grounds of "lack of adequate protection because of failure to make sufficient adequate protection payments and lack of sufficient equity cushion." (DE 671, p. 2 of Motion for Relief).

16-bk-33185    Response to Relief from Stay Motion – pg. 1

Chase also contends that there is "no equity in the collateral and the property is not necessary for an effective reorganization.(*ibid*)

Momentarily, debtor will assess and explain Chase's intentional fabrication of these two false statements. And why relief from the stay would be deleterious on a multitude of levels both to debtor and the progress of this Bankruptcy.

## 2. DEBTOR'S OFFER of COMPROMISE

The Trustee has accepted debtor's exemptions regarding debtor's residence which is the property for which Chase seeks relief from stay herein (see DE 506 and 489 at p.2). Debtor is thus entitled to $550,000.oo pursuant to that exemption from Bankruptcy liquidation.

Additionally, because Mrs. Szanto, as spouse of the debtor (and not based on any community property law) has perfected a homestead exemption as a 22 year resident of the subject property. And because she is elderly, disabled and handicapped, she is entitled, pursuant to CA Code of Civil Procedure § 704.730 to $175,000 after foreclosure.

Upon payment to Susan and Peter Szanto respectively of the $175,000 and $550,000 described above, debtor and Susan Szanto will

16-bk-33185    Response to Relief from Stay Motion – pg. 2

quitclaim all right, *in perpetuity*, to the subject property. And will abandon and deliver said property to Chase.

This offer is predicated upon immediate delivery of $725,000 to debtor and Mrs. Szanto. And further provision that debtor and his spouse may occupy the subject property for 9 months after delivery of the agreed to $725,000. Said 9 months being the amount of time debtor and Mrs. Szanto anticipate necessary to secure a new residence (while finalizing the instant Bankruptcy and while Mrs. Szanto continues the process of liver transplantation).

### 3. MEMORANDUM in RESPONSE

#### a. Chase's INCORRECT Argument of Debtor's Lack of Equity

Chase's basis for relief from the stay is 11 USC § 362(d)(1 and 2)'s: 1) lack of equity in the collateral which is to be liquidated 2) the property is not necessary to effective reorganization and 3) that there is a lack of adequate protection payments.

Debtor will address the erroneous equity arguments first.

Even though this matter is proceeding in Chapter 7, debtor will be making further applications for conversion to Chapter 11. Additionally,

16-bk-33185 Response to Relief from Stay Motion – pg. 3

Case 16-33185-pcm7    Doc 694    Filed 03/11/19

at all times since the conversion to Chapter 7, debtor has represented that it is his intent to restructure debt and to retain the subject property (see DE 318, pp. 1-5)

Debtor contends that **neither** 11 USC § 362(d)(2) requirement is presently satisfied so as to justify any lawful relief from the stay.

### 1. DEBTOR'S EQUITY

Chase cites (DE 671, p.1 of Motion) to debtor's own representation from May of 2017 (nearly 2 years ago) as to the home's value. At that time debtor did not reside at the property and apprised the Court of various items of deferred maintenance and opportunities for home improvement.

Now debtor has resided at the property since conversion to Chapter 7, 16 months ago. All of the problematic issues of deferred maintenance, painting of the premises (inside and out), landscaping, etc., etc., etc. have been resolved by debtor's own personal actions and labors.

After agreement with the Trustee as to abandonment of the property to debtor (DE 562) on 11-29-2019. Debtor began marketing the property.

16-bk-33185    Response to Relief from Stay Motion – pg. 4

Debtor's listing presentation [EXHIBIT A] offers the home for sale for $3,500,000.oo.

Debtor is a California Real Estate Broker with more than 50 years experience in the marketing of real property. Debtor includes various comparable properties in the listing sheet, which he updates weekly to account for changes in market conditions and sales and offerings.

Debtor has had offers, and is in active negotiations with 2 potential buyers which will likely result in a sale at or near $3.2 million dollars.[1]

Given the likely sales price of $3.2 million dollars and Chase's own representation of $2.574 million dollars of debt (DE 671, p.1 of Motion) debtor's real equity is approximately **$626,000**.

Thus, Chase's representation of debtor's equity is in error because it is based on out-dated information and because it does not consider debtor's past, present and on-going sweat-equity infusions into the property's improvement of the last 16 months.

- - - - - - - - - - - - - - - - - - - - - - - - -- -- -- -- --

1. *The current winter has been more harsh than any other winter since debtor has owned the subject property. Negotiations in 40' degree weather for oceanside property are simply very difficult. When winter ends and weather returns to the normal 73', a sale will be quickly consummated.*

The correct measurement and analysis of the metric of equity is far different than merely a financial consideration of how much is owed versus value, because the metric of fully-involved home ownership must be properly considered. See *Sun Valley Newspapers* (1994) 171 BR 71.

The concept of "sweat equity" was articulated by the U.S. Supreme Court so as to explain the importance of the non-accounting and non-monetary value of a "going-concern" – or lengthy ownership which inherently creates **its own tangible values of stability and community**:

> "Even where debts far exceed the current value of assets, a debtor who retains his equity interest in the enterprise retains "property". Whether the value is "present or prospective, for dividends or only for purposes of control" a retained equity interest is a property interest . . . . Indeed, even in a sole proprietorship, where "going concern" value may be minimal, there may still be some value in the control of the enterprise; obviously, also at issue is the interest in potential future profits of a now-insolvent business. See *SEC v. Canandaigua Enterprises Corp*., (1964) 339 F. 2d 14, 21. And while the Code itself does not define what "property" means as the term is used in § 1129(b), the relevant legislative history suggests that Congress' meaning was quite broad. "'Property' includes both tangible and intangible property." H.R. Rep. No. 95-595, at 413."

*Norwest Bank Worthington v. Ahlers*, (1988) 485 U.S. 197, 207-8

In this case, in addition to the debtor's equity described *supra*, debtor's equity comprises all of the **many thousands of hours** he has

16-bk-33185              Response to Relief from Stay Motion – pg. 6

invested in retention of the property as to which there is a dispute. Debtor's efforts are not merely the litigation with Chase, but also the **thousands of hours** he devoted to efforts to become well acquainted with every aspect of the community. And learning to understand values and communicate the merits of the neighborhood effectively to potential buyers and renters. Among other things, debtor has, 1) served on the community's board of director's (in efforts to change community ownership from co-operative to individual ownership (this is more fully discussed in the PLAN and the disclosure statement (DE 102 and 164)), 2) hundreds of hours of viewing, presentation and negotiation of dozens of real property agreements in the community (thus becoming well versed in real property and relative values and their maintenance as well as the demographics of potential buyers and renters.), 3) extensive preparation, planning and execution of the complete resolution and rectification of all deferred maintenance at the property, 4) presentation and display of the property to dozens of potential purchasers and renters in anticipation that the foreclosure threat will soon be resolved, so that debtor can move forward with sale of the subject property.

> "This is particularly so since the whole "sweat equity" theory of "new value" was so carefully discussed by the Supreme Court in *Norwest Bank Worthington v. Ahlers*, which held that contributions of new value must be "money or money's worth[2]." Presumably, post-petition earnings contributed to a plan indeed constitute "money or money's worth," and are not mere "sweat equity," as indeed now these kinds of property are part of the estate."

*In re Lindsey*, (2011) 453 B.R. 886, 901

---

2. *'Money's worth' being the sweat equity and personal input effort described earlier*

16-bk-33185    Response to Relief from Stay Motion – pg. 7

Specifically, debtor's efforts to create value from the property, as well as preparing for further steps to be taken in its sale are all meaningful values in which debtor's efforts and work were expended in furtherance of contributing to and increasing his equity in the property !

To reiterate *Norwest* (*ibid*): "Whether the value is "present or prospective, for dividends or only for purposes of control" a retained equity interest is a property interest." That property interest is the equity, built-up increased and enhanced over 20 years which debtor seeks also to protect!

Thus, contrary to Chase's speculation, debtor's equity is the sweat of his brow, sweat of his muscle, sweat of his mental efforts, the sweat of straining to maximize the property's value, and the keen effort of the perseverance debtor has expended.

### b. *Chase Seeks to Make a Double Recovery*

The Motion for Relief from Stay questions the fundamental foundation of Bankruptcy Law: **Chase's affirmed entitlement to approximately $500,000 of arrearages is guaranteed by money which is currently held by Trustee for the benefit of Chase**.

Indeed, as will be considered in section 3, Adequate Protection, the essential question in this Motion for Relief from Stay is why Chase has not requested the Trustee to provide adequate protection for its claim?

16-bk-33185         Response to Relief from Stay Motion – pg. 8

Indeed, Chase has always represented its interests to be only to make recovery of arrearages. Chase has not represented in its claim that it seeks possession. As a matter of fact, Chase's efforts at foreclosure, were it to go forward, would be severely complicated by the fact that the above mentioned exemptions of $550,000 and $175,000 would be due and payable to debtor and Mrs. Szanto immediately. However, Chase would be constrained in delivery of good title to any *bona fide purchaser*, because debtor's right to redeem the property extends for 1 year after foreclosure, see CA Code of Civil Procedure § 729.010.

**Likewise, the entire amount of Chase's represented debt of $1.59 million is also guaranteed by the $2.2 million of property value which Chase itself represents in its motion!**

**Here, Chase has made no representation of any intent to withdraw its Bankruptcy claim if it is allowed to move this matter to foreclosure.**

**The relief from stay would thereby compound the problems with Chase's claim, because Chase appears to seek to participate in foreclosure while at the same time making a recovery from debtor's liquidation. Chase has made no representation that it would withdraw its claim after securing foreclosure.**

16-bk-33185             Response to Relief from Stay Motion – pg. 9

Case 16-33185-pcm7    Doc 694    Filed 03/11/19

### c. Blind Siding Trustee and Debtor – No Request for Adequate Protection

As discussed above, Chase is entitled to money and not the right to venal and sadistic **extermination** of debtor and Mrs. Szanto. Debtor and Mrs. Szanto are both ill, elderly and suffer from life terminating afflictions.

Currently, loss of the subject property is equivalent to a sentence of death for debtor and his spouse: they simply do not have the resources to afford another home.

Certainly, Chase is well aware of this predicament faced by debtor and his spouse – and there is likely a euphoric and very giddy anticipation at Chase that debtor will be made homeless. Thus, it is not surprising that Chase initiated relief from stay proceedings rather than seeking 11 USC § 361 request for adequate protection proceedings.

Because Chase's goal is to cause pain and suffering wherever it can – without consequence to itself and with immense demonic pleasure to its counsel – it is not surprising that Chase never sought or phoned to discuss any compromise with debtor or the Trustee as to making adequate protection payments or some other reasonable (humane) solution.

16-bk-33185   Response to Relief from Stay Motion – pg. 10

Thus, because as Chase represents (DE 671, Motion, p. 1) debtor's payments are $4,744.58. Debtor suggests that short of relief from stay and subsequent loss of debtor's home, there is an alternative of providing the $4,744.58 adequate protection to which Chase is entitled.

The facts are these. After Chase's previous effort for relief from stay (DE 203), debtor agreed -- and did – make $5,000 / month adequate protection payments.

After conversion to Chapter 7, debtor asked that the payments be stayed (DE 294). The Trustee stayed these payments (DE 299) [EXHIBIT B], because he controlled all of the money of the estate.

Thereafter, Trustee and debtor agreed to abandonment of the subject property from debtor's estate (DE 562) which became effective on 11-29-2018. And after which debtor has engaged in diligent and effective sales efforts.

Sadistically, without any warning or effort to seek protection or any compromise Chase filed the instant request for relief from stay just 68 days later.

Debtor suggests to the Court that Chase's effort be seen for what it is – an effort impermissibly to punish, humiliate and denigrate debtor by

16-bk-33185  Response to Relief from Stay Motion – pg. 11

loss of his home for the sole purpose of causing suffering and mental anguish to elderly people who are both in the process of dying in any event.

### d. *Tortious Interference with Business Advantage*

Tortious interference with a business relationship is also referred to as 'tortious interference with prospective economic advantage'; no matter the term used, the elements are the same. *RFP LLC v. SCVNGR* (2011) 788 F.Supp.2d 191.

The elements of tortious interference with a business relationship are "(1) the plaintiff **(here debtor)** has business relations with many third parties **(potential buyers of the subject property)**; (2) the defendant **(Chase)** interfered with those business relations; (3) the defendant **(Chase)** acted for a wrongful purpose or used dishonest, unfair, or improper means **(by making false statements about valuation and failing to seek adequate protection)** ; and (4) the defendant's **(Chase)** acts injured the relationship **(by causing debtor to make full disclosures of a very problematic nature to potential buyers)**." *Catskill Dev., L.L.C. v. Park Place Entm't Corp.*, (2008) 547 F.3d 115, 132.

Here, since Chase filed its motion for relief from stay, debtor has been severely impacted by having to communicate to potential buyers the

16-bk-33185     Response to Relief from Stay Motion – pg. 12

issues raised by Chase's motion (it would be a severe ethical violation of the California Real Estate Licensure rules if debtor did not make such full and complete disclosures).

As could be expected these disclosures to potential buyers were not received with happiness nor pleasure and debtor's ability to sell the subject property has been harmed (perhaps, irrevocably) thereby.

Additionally, because debtor's furniture is part of the Bankruptcy estate, said furniture was stored. Debtor rented and borrowed furniture to decorate the subject property for sale. Again, debtor was ethically bound to apprise those from whom he borrowed furniture and household decorations about the events of the potential foreclosure.

Debtor contends Chase's egregious effort for relief from the Bankruptcy stay was undertaken for improper purposes of emotionally and physically harming debtor and his spouse with foreknowledge that those efforts would likely cause homelessness and death. And at the same time knowingly interfering with debtor's efforts to sell the subject property at the highest and best price.

Thus, Chase's relief from stay – compounded by inaccurate statements regarding the value of the property, disregard of all efforts to seek adequate protection payments can readily be seen to have been undertaken for improper purposes simply to vex debtor and to interfere

with his efforts to obtain the highest and best price for his property.

Thus, the entire Motion for relief from stay becomes nothing more than Chase's abuse of process, because relief from stay was never intended to cause a debtor's physical and mental annihilation.

### e. *Knowing False Statement by Chase*

It should not be surprising to this Court that Chase would make intentionally false statements in an effort to mislead and deceive this Court so as to prevail in heinous disregard of truth, justice and law.

Here, such blatant knowingly false statement appears on Chase's motion (DE 671, p. 1(d)) where the value of debtor's home is represented as of $2.275 million. This valuation is from debtor's own May 2017 value of the property.

Now, however, matters have moved forward and in [EXHIBIT B], p.1, #2] filed 12-13-17, the Trustee states: "The Trustee has received a CMA with a value of $2,816,730."

Chase's false representation is the foundation of Chase's Motion for Relief from Stay, because with the higher figure there is plenty of equity for

16-bk-33185	Response to Relief from Stay Motion – pg. 14

both creditors and debtor.

There is no valid reason for Chase to have intentionally disregarded the later valuation by the Trustee.

The Court should consider sanctions against Chase for this intentional mis-statement which was certainly filed by Chase in a blatant effort purposefully to mis lead this Court.

## 4. Declaration

1. My name is Peter Szanto.
2. I am the debtor herein.
3. This is my truthful declaration supporting my opposition to Chase's relief from stay application.
4. Not one of the more than dozen Chase attorneys with whom I am in current communication regarding this Bankruptcy contacted me at any time after I recovered ownership of the subject property after 11-29-19 as to adequate protection payments in lieu of foreclosure.
5. Chase's reliance on a valuation price regarding the subject property from 2 years ago is good demonstration and excellent evidence of the manner in which Chase seeks intentionally to deceive this Honorable court: by presenting facts known to be false.

16-bk-33185   Response to Relief from Stay Motion – pg. 15

6. Competent evidence regarding valuation is in the record (DE 299).

7. **Chase intentionally chose to disregard the record in hopes of purposefully deceiving this Court.**

8. Since conversion of this Bankruptcy to Chapter 7, I have resolved all deferred maintenance, property rehabilitation, landscaping and many other various ancillary issues of improvement of the subject property.

9. I estimate that I have engaged in more than 1300 hours of labor and management activities in support of making the subject property ready for sale in the last 16 months after conversion.

10. I received no compensation for that labor.

11. I know to an absolute certainty that Chase monitors my activities with private investigators who spy on me.

12. I know this because over the years, I have confronted persons "shadowing me" who have admitted they worked for Chase as private investigators.

13. I believe that in the present setting, Chase, in its surveillance of of me -- and intrusion upon my privacy, realized that the subject property was in **perfect condition** and **"decked-out"** for sale.

14. In the present circumstances, I believe to an absolute certainty, that Chase made its relief from stay motion at the optimum time thinking that Chase could "scoop-up" a property in absolutely "primo, tip top" condition.

14. And thereafter "grab" those profits of my sweat equity to which I am entitled.

16-bk-33185    Response to Relief from Stay Motion – pg. 16

15. Being a rational business person, and not a pig. my offer to Chase of "cashing" me out for $725,000 allows Chase to make a reasonable additional profit in marketing and selling the subject property after they become its owner.
16. I am ready, willing and able to make adequate protection payments from post-petition earnings.
17. I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Signed at Irvine CA.

Dated 3/11/ 2019    /s/ *signed electronically* Peter Szanto

## 6. Conclusion

For the reasons enumerated, and other reasons to be explained by testimony at the hearing, debtor prays denial of the Motion for Relief from Stay.

Respectfully,

Dated 3/11/ 2019    /s/ *signed electronically* Peter Szanto

16-bk-33185         Response to Relief from Stay Motion – pg. 17

## PROOF of SERVICE

My name is Maquisha Reynolds, I am over 21 years of age and not a party to the within action. My business address is PO Box 14894, Irvine CA 92623

On the date indicated below, I personally served the within: **Response** on the following by placing in postage pre-paid envelopes of the within document and mailing same:

a. Internal Revenue Service, PO Box 7346, Philadelphia PA 19101
b. First Service Residential, 15241 Laguna Canyon Rd, Irvine CA 92618
c. JPMorgan Chase Bank, represented by:
      Gadi Shahak c/o Shapiro & Sutherland
      1499 SE Tech Center Place, Suite 255 , Vancouver, WA 98683
d. Bank of America, c/o McCarthy & Holthus 920 SW 3rd Av., Portland OR 97204
e. Oregon Department of Revenue, 955 Center St., Salem OR 97301
f. Chapter 7 Trustee, Stephen P Arnot, PO Box 1963, Lake Oswego OR 97035
g. Susan Szanto - 11 Shore Pine, Newport Beach CA 92657
h. Office of the US Trustee, 620 SW Main Street, Suite 213, Portland, OR 97205

by mailing copies to the above parties *via* 1st class mail, postage prepaid, or by e-mail.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Signed at Irvine CA.

Dated 3/11/ 2019    /s/ *signed electronically* M. Reynolds

16-bk-33185        Response to Relief from Stay Motion – pg. 18