**Nicholas J. Henderson, OSB #074027**
nhenderson@portlaw.com
**Troy G. Sexton, OSB #115184**
tsexton@portlaw.com
Motschenbacher & Blattner, LLP
117 SW Taylor St., Suite 300
Portland, OR 97204
Telephone: (503) 417-0508
Facsimile: (503) 417-0528

*Of Attorneys for Creditors*

UNITED STATES BANKRUPTCY COURT

DISTRICT OF OREGON

| | |
|---|---|
| In re:<br><br>PETER SZANTO,<br><br>Debtor. | Case No. 16-33185-pcm11<br><br>MEMORANDUM REGARDING JURISDICTION UNDER 28 U.S.C. § 157(b) AND OREGON LAW ON IIED |

In an Order dated January 8, 2020, the Court ordered Creditors Evye Szanto, Victor Szanto, Barbara Szanto Alexander, Anthony Szanto, Mariette Szanto, Kimberly Bell, Austin Bell, and Nicole Szanto (collectively, the "*Creditors*") to submit briefing on the issue of whether their remaining claims against debtor Peter Szanto (the "*Debtor*") for Wrongful Use of Civil Proceedings ("WUCP") and Intentional Infliction of Emotional Distress ("IIED") are "personal injury tort claims" within the meaning of 28 U.S.C. § 157(b). (ECF 877). The Court also ordered the Creditors to submit briefing on whether Oregon law allows a claim for IIED based on the use of the court process. As more fully explained below, Creditors assert that their WUCP and IIED claims are not "personal injury tort claims" within the meaning of 28 U.S.C.

Page 1 – MEMORANDUM

{00334132:2}

Motschenbacher & Blattner, LLP
117 SW Taylor Street, Suite 300
Portland, OR 97204
Phone: (503) 417-0500
Fax: (503) 417-0501

Case 16-33185-pcm7    Doc 887    Filed 01/31/20

157(b)(2)(B), and thus this Court has jurisdiction to enter a final order on the claims. Additionally, Oregon law allows a claim for IIED based on the use of the court process.

## ARGUMENT

**1. Creditors' Claims Are Not Personal Injury Tort Claims, and the Bankruptcy Court has Jurisdiction to Enter Final Judgment.**

The scope of claims that constitute a "personal injury tort" under 28 U.S.C. § 157(b)(2)(B) – and are therefore not considered a "core proceeding" within the jurisdiction of the Bankruptcy Court – is narrow. Indeed, such claims require "actual trauma, bodily injury or psychiatric impairment beyond mere shame or humiliation" in order to qualify for this limited exception. The WUCP and IIED claims do not fall within the narrow definition of "personal injury torts" under section 157. Therefore, this Court has jurisdiction over these claims and the authority to adjudicate them.

This precise issue was recently analyzed in depth by the United States Bankruptcy Court for the Southern District of New York in the matter of *In re Gawker Media LLC*, 571 B.R. 612 (2017). In *Gawker*, the court considered whether claims for defamation, false light and injurious falsehood constituted "personal injury torts" under section 157. The court conducted a study of how other courts throughout the country have addressed the issue and concluded that three general approaches were taken. The first approach, termed the "narrow view", requires actual trauma, bodily injury or psychiatric impairment beyond mere shame or humiliation to meet the definition of "personal injury tort." *Id*. at 620. The second approach, termed the "broad view", includes within the definition of "personal injury tort" "a broad category of private or civil wrongs or injuries for which a court provides a remedy in the form of an action for damages," including damages to an individual's person as well as "any invasion of personal rights, such as libel, slander and mental suffering." *Id*.; citing *In re Residential Capital, LLC*, 536 B.R. 566,

Page 2 – MEMORANDUM

{00334132:2}

**Motschenbacher & Blattner, LLP**
117 SW Taylor Street, Suite 300
Portland, OR 97204
Phone: (503) 417-0500
Fax: (503) 417-0501

Case 16-33185-pcm7    Doc 887    Filed 01/31/20

572 (2015). The third approach, termed the intermediate or "hybrid" approach, allows bankruptcy courts to adjudicate claims bearing the "earmarks of a financial, business or property tort claim, or a contract claim" even where those claims might appear to be "personal injury torts" under the broad view. *Id.*; quoting *Stranz v. Ice Cream Liquidation, Inc.* (*In re Ice Cream Liquidation, Inc.*), 281 B.R. 154, 161 (Bankr. D. Conn. 2002).

*Gawker* relied on the legislative history of section 157 as well as canons of statutory construction to conclude that the "narrow view" of personal injury torts under section 157 is the correct one. Recognizing the importance of statutory context and applying the canon *noscitur a sociis* ("a word is known by the company it keeps"), the court focused on the fact that the relevant statutory provision couples "personal injury torts" with "wrongful death claims" and concluded that the term "personal injury tort" should be construed in a manner "meaningfully similar" to wrongful death, and thus require a physical trauma. *Id.* at 620-621.

*Gawker* also analyzed the legislative history of the statute and focused on the fact that the carve-out for personal injury torts was the result of lobbying efforts by the plaintiffs' asbestos bar, who raised constitutional, as well as practical arguments against the adjudication of personal injury and wrongful death actions in bankruptcy court:

> The personal injury tort/wrongful death exception originated with lobbying, including testimony, from personal injury lawyers who found themselves and their clients dragged into the *Johns–Manville* case and other asbestos bankruptcies. In the wake of the *Manville* bankruptcy and the Supreme Court's decision in *Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.*, the Senate conducted hearings to consider amendments to the Bankruptcy Code and related jurisdictional provisions. Robert Steinberg, Esq., appearing on behalf of the Asbestos Litigation Group, an association of lawyers representing plaintiffs in asbestos litigation, testified that "the bankruptcy courts have other challenging and difficult issues to deal with and should not be a repository for thousands and thousands of personal injury claims and the necessity to litigate those." John P. Sears, Esq., another representative of the Asbestos Litigation Group, submitted a letter to Senator Robert Dole that referred to "the well-established principle of American jurisprudence that the exercise of an individual's constitutional right to

Page 3 – MEMORANDUM

{00334132:2}

Motschenbacher & Blattner, LLP
117 SW Taylor Street, Suite 300
Portland, OR 97204
Phone: (503) 417-0500
Fax: (503) 417-0501

Case 16-33185-pcm7    Doc 887    Filed 01/31/20

a trial by jury of a personal injury and wrongful death claim is the most effective and fair method of resolution," and stated that "[a]sbestos victims must not be stripped of their constitutional right to a trial by jury of their personal injury and wrongful death claims."

In June 1984, Congress took up the final debate on the amendments that ultimately became part of the 1984 Amendments. Senator DeConcini explained that "[t]he amendments that I propose seek to balance effective bankruptcy administration with the constitutional concerns reflected in the *Marathon* decision and the concerns of personal injury tort claimants." While recognizing that "[b]ankruptcy courts must retain their traditional, long established, and undisputed power to resolve such claims inexpensively and expeditiously if our bankruptcy system is to work," including the estimation of claims, and "[a] broad limitation on estimation of contract claims ... would create unnecessary delays and increased cost if there had to be de novo review by a district court judge of every such matter," the exemption of personal injury tort actions from the list of core proceedings addressed a concern of many of his colleagues. Personal injury tort creditors "do not voluntarily become involved" with the debtor, and "should have the protection of having any final order entered by an article III district court judge." Senator DeConcini referred to "claims arising from automobile accidents" as examples of the personal injury tort claims he had in mind, and Representative Kastenmeier, the ranking majority member on the House Judiciary Committee and one of the floor managers, described the exceptions to core jurisdiction under the 1984 Amendments, including the personal injury tort/wrongful death exception, as a "narrow category of cases."

Where Congress adopts language urged by a witness, it may be assumed that Congress also adopted the intent voiced by the witness. Federal courts frequently look to committee member and interested-party statements made during committee hearings about conditions requiring legislative attention as an aid to determine legislative intent. Because committee hearing records are distributed to Congress members, courts assume they had knowledge of these statements and the evils they described, and that passage of a proposed bill is some evidence of their intent to remedy these evils. The representatives of the Asbestos Litigation Group testified before the Senate about their concerns resulting from their experience in the *Johns–Manville* bankruptcy, about a bankruptcy court's power to estimate and liquidate personal injury and wrongful death claims, and the denial of the right to try those claims before a jury. Those specific concerns—and no others—were addressed by exempting personal injury tort and wrongful death claims from the otherwise broad definition of core claims in 28 U.S.C. § 157(b), singling them out from the provisions of mandatory abstention, 28 U.S.C. § 157(b)(4), requiring them to be heard in an Article III court, 28 U.S.C. § 157(d)(5), and preserving the right to trial by jury. 28 U.S.C. § 1411(a). Although Congress did not intend to limit personal injury tort claims to asbestos claims—Senator DeConcini referred to the example of an automobile accident—

Page 4 – MEMORANDUM

{00334132:2}

Motschenbacher & Blattner, LLP
117 SW Taylor Street, Suite 300
Portland, OR 97204
Phone: (503) 417-0500
Fax: (503) 417-0501

Case 16-33185-pcm7    Doc 887    Filed 01/31/20

the exception was intended to be narrow and not derogate from the bankruptcy
court's traditional role of resolving claims through the claims resolution process.

*Id*. at 621-622. (Internal citations and quotations omitted.)

In addition to finding support for the narrow view of "personal injury tort" based upon principles of statutory construction and the legislative history of section 157, *Gawker* went on to describe the flaws in the "broad view" and the "hybrid approach" that had been adopted by some other courts in the past. The flaw with the broad view is clear. It "ignores both the canons of construction and the legislative history, and cuts a broad exception that removes all tort claims from the jurisdiction of the bankruptcy court's claims resolution process." *Id*. at 622. "Thus, the broad interpretation essentially equates 'personal injury tort' with any 'tort,' and renders the limiting phrase 'personal injury' superfluous." *Id*. The hybrid approach, meanwhile, "finds no support in the words of the relevant statutes [or] any canon of construction or the legislative history" and is "unworkable."

Applying the narrow view here, it is readily apparent that the WUCP claim does not fall within the definition of "personal injury torts" under section 157. The crux of Debtor's actionable conduct is his wrongful use of civil proceedings. The majority of the damages sought by Creditors are economic in nature, as Creditors seek to recover the massive sums of attorneys' fees and costs incurred in defending against Debtor's baseless and malicious court filings. Those damages are readily ascertainable, and bear no resemblance to "actual trauma, bodily injury or psychiatric impairment beyond mere shame or humiliation."

While economic damages are the focus of the Creditors' WUCP claim, they also assert non-economic damages. The non-economic portion of Creditors' WUCP claim, which is incidental to the primary claim for attorney fees, does not change the claim to a "personal injury tort claim." A similar situation was presented in *In re Residential Capital, LLC*, 536 B.R. 566

Page 5 – MEMORANDUM

{00334132:2}

Motschenbacher & Blattner, LLP
117 SW Taylor Street, Suite 300
Portland, OR 97204
Phone: (503) 417-0500
Fax: (503) 417-0501

Case 16-33185-pcm7    Doc 887    Filed 01/31/20

(2015), where the claimant alleged intentional infliction of emotional distress arising from an alleged wrongful foreclosure on the claimant's home. The court found that wrongful foreclosure claim, and not the IIED claim, was the "central focus" of the claimant's allegations. The court therefore concluded that the IIED claim, which was incidental to the wrongful foreclosure claim, did not fall within the definition of a personal injury tort under section 157:

> [I]f an IIED claim is the tail wagging the dog, section 157(b)(5) should not require dislodging the claim from bankruptcy court resolution of a portion of a claim asserted against a debtor. If the IIED claim is the gravamen of the claim, section 157(b)(5) does not permit the bankruptcy court to try the claim absent consent. But when the context and central focus of the claim is not about physical injury or emotional distress, the claim should remain in the bankruptcy court.

*Id*. at 573. (Internal citations omitted).

Logic dictates that claims for emotional distress that are not the focus of a complaint should not be transferred to the district court. Otherwise, "alleged incidental damages such as those present in … case[s] largely concerning economic damages would too easily get transferred and too readily remove the jurisdiction of the court designated to try bankruptcy related issues." *Bertholet v. Harman*, 126 B.R. 413, 415 (1991). Indeed, emotional distress can simply be pled as damages for violation of a right that is a core proceeding and thus avoid any jurisdictional questions under section 157 altogether. This approach was taken in *Crossley v. Lieberman*, 90 B.R. 682 (1988), where the claimant alleged emotional distress damages as a result of the debtor's alleged violation of the Fair Debt Collection Practices Act. The United States District Court for the Eastern District of Pennsylvania found that the mere presence of personal injury damages does not *per se* divest the bankruptcy court of jurisdiction under section 157, and it held that "consequential damages for emotional or physical distress does not trigger the application of 11 U.S.C. § 157(b)(5)." *Id*. at 692.

Page 6 – MEMORANDUM

{00334132:2}

Motschenbacher & Blattner, LLP
117 SW Taylor Street, Suite 300
Portland, OR 97204
Phone: (503) 417-0500
Fax: (503) 417-0501

Case 16-33185-pcm7    Doc 887    Filed 01/31/20

Whether pled as consequential damages resulting from Debtor's wrongful use of civil proceedings or as an independent claim for IIED, the fact is that Creditors' emotional distress is the result of Debtor's wrongful use of civil proceedings, which is the gravamen of the claim and which is unquestionably a core proceeding subject to this Court's jurisdiction. The fact that Creditors also have a claim styled "Intentional Infliction of Emotional Distress" is immaterial, and depriving this Court of the opportunity to adjudicate Creditors' claims for emotional distress damages based solely on how they are pled would be an elevation of form over substance.

**2. Oregon Law Allows an IIED Claim Based on the Court Process.**

Under Oregon law, the elements of a claim for IIED are:

(1) The "defendant intended to inflict severe mental or emotional distress" or that the distress was certain or substantially certain to result from the defendant's conduct;

(2) The defendant's acts "in fact cause[d] the plaintiff severe mental or emotional distress"; and

(3) The defendant's acts consisted of "'some extraordinary transgression of the bounds of socially tolerable conduct'" or exceeded "'any reasonable limit of social toleration.'"

*Patton v. J.C. Penney Co., Inc.*, 301 Or 117, 122, 719 P2d 854 (1986) (*quoting Hall v. May Dept. Stores Co.*, 292 Or 131, 135, 137, 637 P2d 126 (1981)); *Schiele v. Montes*, 231 Or App 43, 48, 218 P3d 141 (2009) (stating elements of claim).

Creditors have not found any case law standing for the proposition that a claim satisfying the IIED elements set forth above cannot be pursued if the wrongful conduct stems from judicial proceedings. Instead, Oregon case law contains examples of cases in which IIED claims are based on conduct that included judicial proceedings.

In *Checkley v. Boyd*, 170 Or. App. 721 (2000), the Oregon Court of Appeals reversed an order dismissing an IIED claim that was, in part, based on judicial proceedings that were

Page 7 – MEMORANDUM

{00334132:2}

Motschenbacher & Blattner, LLP
117 SW Taylor Street, Suite 300
Portland, OR 97204
Phone: (503) 417-0500
Fax: (503) 417-0501

Case 16-33185-pcm7    Doc 887    Filed 01/31/20

"adjudicated to be without merit." *Id*. at 726. In *Checkley*, the plaintiff brought claims for IIED and WUCP, based on a party exerting influence over plaintiff's brother, accusing plaintiff of theft, and encouraging the brother to file a unfounded lawsuit to remove the plaintiff as the brother's guardian. *Id*. at 725. The plaintiff alleged that causing his brother to file suit was outrageous conduct, designed to cause emotional distress:

> The complaint further alleged that, at the Boyds' urging, Wagner initiated proceedings to remove plaintiff as his guardian and conservator and that the allegations in support of removal were adjudicated to be without merit. According to the complaint, the Boyds' conduct in that regard was "deliberate and intentional and designed to cause [plaintiff] extreme turmoil and distress," and plaintiff did, in fact, suffer from "extreme and lasting emotional turmoil [and] distress" as a result.

*Id*. The trial court initially dismissed the IIED and WUCP claims for failure to state a claim. The Court of Appeals reversed, holding that the plaintiff's allegations satisfied the outrageousness element of the tort of IIED. *Id*. at 727.

Additionally, Oregon case law also has examples of other torts being based on judicial proceedings. Defamation and intentional interference with economic relations claims have been based on wrongful judicial proceedings. *See Clausen v. Carstens*, 83 Or.App. 112, 117–18, 117 n. 12, 730 P.2d 604 (1986) (with respect to IIER claim, "[a]mong the improper means that a defendant may use is unfounded litigation."); *see also Mantia v. Hanson*, 190 Or. App. 412, 421, 79 P.3d 404, 409 (2003). Logically, if other torts, such as IIER or defamation, can be based on wrongful and frivolous use of civil proceedings, there is no reason that an IIED claim would be unavailable.

## **CONCLUSION**

For the foregoing reasons, the Creditors' remaining claims for WUCP and IIED are <u>not</u> personal injury tort claims within the meaning of 28 U.S.C. § 157(b). Additionally, Creditors'

Page 8 – MEMORANDUM

Motschenbacher & Blattner, LLP
117 SW Taylor Street, Suite 300
Portland, OR 97204
Phone: (503) 417-0500
Fax: (503) 417-0501

{00334132:2}

Case 16-33185-pcm7    Doc 887    Filed 01/31/20

claim for IIED is a viable claim under Oregon law, notwithstanding the fact that the claim is based on judicial proceedings. Thus, this Court has the authority to retain the matter and adjudicate both causes of action, and may enter final judgment on such claims.

DATED: January 31, 2020

MOTSCHENBACHER & BLATTNER LLP

By:/s/ Nicholas J. Henderson
   Nicholas J. Henderson, OSB No. 074027
   Of Attorneys for Creditors Evye Szanto, *et al*.

Page 9 – MEMORANDUM

{00334132:2}

**Motschenbacher & Blattner, LLP**
117 SW Taylor Street, Suite 300
Portland, OR 97204
Phone: (503) 417-0500
Fax: (503) 417-0501

Case 16-33185-pcm7    Doc 887    Filed 01/31/20

# CERTIFICATE OF SERVICE

I hereby certify that on January 31, 2020, I served the foregoing MEMORANDUM on the following by mailing first class, postage prepaid:

    NONE

And BY EMAIL TO:

    NONE

THE FOLLOWING WERE SERVED ELECTRONICALLY THROUGH ECF/PACER:
- Candace Amborn    ambornoffice@gmail.com, cea@trustesolutions.net
- GARY L BLACKLIDGE    gary.blacklidge@jordanramis.com, gary.blacklidge@jordanramis.com
- TIMOTHY CUNNINGHAM    timcunningham@dwt.com, marleahdolson@dwt.com;pdxdocket@dwt.com
- KEVIN HISASHI KONO    kevinkono@dwt.com, cynthiapeek@dwt.com;pdxdocket@dwt.com
- BORIS KUKSO    boris.kukso@usdoj.gov, western.taxcivil@usdoj.gov
- JAMES P LAURICK    jlaurick@kilmerlaw.com, tparcell@kilmerlaw.com
- HILARY BRAMWELL MOHR    hilary.b.mohr@usdoj.gov, hilary.b.mohr@usdoj.gov
- DAVID OLSEN    lawofficeofolsen@gmail.com
- CASEY C PENCE    bknotice@mccarthyholthus.com
- ALEX I POUST    apoust@schwabe.com, docket@schwabe.com;gvance@schwabe.com
- CARA J RICHTER    gshahak@logs.com
- MICHAEL SCOTT    bknotice@mccarthyholthus.com, mscott@mccarthyholthus.com;mscott@ecf.courtdrive.com
- TROY SEXTON    tsexton@portlaw.com, nhenderson@portlaw.com,mperry@portlaw.com,troy-sexton-4772@ecf.pacerpro.com
- GADI SHAHAK    gshahak@janewaylaw.com
- MARTIN L SMITH    martin.l.smith@usdoj.gov
- Peter Szanto    szanto.pete@gmail.com
- US Trustee, Portland    USTPRegion18.PL.ECF@usdoj.gov

    MOTSCHENBACHER & BLATTNER, LLP

    /s/ Nicholas J. Henderson
    Nicholas J. Henderson, OSB No. 074027
    Motschenbacher & Blattner LLP
    Of Attorneys for Creditors Evye Szanto, *et al.*