Peter Szanto   949-887-2369
11 Shore Pine
Newport Beach CA 92657

# U.S. BANKRUPTCY COURT

### DISTRICT OF OREGON
*1050 SW 6th Ave #700 Portland, OR 97204 (503) 326-1500*

| | |
|---|---|
| **In Re Peter Szanto**, <br> Involuntary Debtor <br><br> **HEARING REQUESTED** | **# 16 –bk-33185 pcm7** <br><br> **Response Brief** <br><br> **Claims 8-13** |

## 1. The Order

This court has ordered briefing (DE 877, p. 3:6-22):

(A) Whether any remaining claims for WUCP and IIED are personal injury tort claims within the meaning of 28 U.S.C. § 157(b) and whether personal injury tort claims must be immediately transferred to the United States District Court for the District of Oregon or whether this Court has the authority to retain the matter up to and including the lodging of a final pretrial order or to issue proposed findings of fact and conclusions of law.

(B) Whether Oregon law allows a claim for IIED based on the use of court process.

## 2. Mr. Henderson's Attempted End Run Around Law

As will be fully discussed shortly, one factor to determine whether

16-bk-33185         Response Brief –                                    pg. 1

a case is within the core Bankruptcy proceeding jurisdiction of this court is whether the personal injuries stand alone. To "stack the deck" in his favor on this issue, Mr. Henderson included an economic injury component to his amended claims in the form of the attorney fees that were already previously requested by motions, which had been fully briefed and could not be any part of a new trial.

Now that the costs and fees motions have been decided, all that remain are solely emotional distress claims based on wrongful use of civil process claims. (see claims 8-13)

There is no independent cause of action in Oregon for Intentional Infliction of Emotional Distress. Therefore, the only matter at issue now is whether this court has the authority to hear a new proceeding under ORS 31.230.

### 3. Oregon's Wrongful Use of Civil Proceeding Law

### *a. Underlying Proceeding Has NOT CONCLUDED!!*

To be extremely specific, ORS 31.230, the wrongful use of civil proceeding law states very explicitly, that neither jurisdiction nor ripeness exist for that cause of action until, (see ORS 31.230(3)):

> A claim for damages for wrongful use of a civil proceeding shall be brought in an original action **after the proceeding which is the subject matter of the claim is concluded.**

16-bk-33185          Response Brief –          pg. 2

Regardless of the metric: a) conclusion of Bankruptcy proceeding 16-33185 or b) conclusion of adversarial proceeding 16-3114; neither of those cases has concluded. Claims 8-13 are opposed on various grounds see (DE 941-DE 950). A bar to conclusion is also the fact that the District Court has yet to act regarding any 28 USC § 157(c) "final judgment."

Additionally, the statute is vague and ambiguous about conclusion: does it mean after the conclusion of the trial court case or does it mean after the conclusion of all appeals?

On a multitude of issues, therefore, **under no circumstances is any conclusion** -- by any measure yet of record, as to the adversarial proceeding **or** the Bankruptcy in this court which are the underlying cases which claim IIED money regarding wrongful use of civil process.

### b. *Wrongful Use of Civil Proceeding Law Must Be Original Action*

ORS 31.230, the wrongful use of civil proceeding law states very specifically that jurisdiction and ripeness for such an action exist only as an original action, (see ORS 31.230(3)):

> **A claim for damages for wrongful use of a civil proceeding shall be brought in an original action** after the proceeding which is the subject matter of the claim is concluded.

The mandate of an original action means that Peter Szanto, as a

16-bk-33185          Response Brief –          pg. 3

non-Bankruptcy court defendant will be able to seek legal representation so as to protect his rights; **a right which has been consistently denied to him by the Bankruptcy court** (whether this is measured by Judge McKittrick's refusal to extend time for Peter Szanto to find counsel OR denial of venue change to employ California counsel who was prepared to work without compensation OR knowing denial of Peter Szanto's ability to secure counsel by failing to release estate assets for that purpose, Peter Szanto's <u>**fundamental right to legal representation**</u> has very clearly been reprehensibly, knowingly and brutally abrogated in this case).

Peter Szanto's ability to be represented by counsel during the present Covid crisis during which Peter Szanto's already cancer-sapped strength, is further depleted by exhaustive precautions to avoid the virus (IE, Peter Szanto still has chemotherapy 3 times a week, but the current health precautions make this an extremely time consuming process). All of Peter Szanto's health problems constrain his ability to work on tasks in this matter or to prepare for trial herein. And so, Peter Szanto is desperate for legal assistance which he can obtain in a case where defense attorney fees are guaranteed by the fees reciprocity clause under ORS 31.230.

### 4. Decision Regarding Personal Injury is for the District Court

Because, as always, Peter Szanto is transparent and co-operative he will address the requests of the ORDER momentarily.

However, **<u>to protect his rights from waiver</u>**, Peter Szanto must point out that determination of whether a matter is personal injury is not

16-bk-33185      Response Brief –      pg. 4

within the jurisdiction of the Bankruptcy court.

11 USC § 157(b)(3) states: "The bankruptcy judge shall determine, on the judge's own motion or on timely motion of a party, whether a proceeding is a core proceeding under this subsection or is a proceeding that is otherwise related to a case under title 11."

The (DE 877) ORDER has not asked whether Mr. Henderson's claims are core or not, but has rather sought briefing regarding personal injury definitions and concepts **which are wholly within the exclusive jurisdiction of the District Court**.

Core proceedings defined in 28 USC § 157 include proceedings integral to restructuring of debtor-creditor rights, whether or not they involve questions of state law, and all proceedings in which right to relief is created by Title 11. **All proceedings which are not integral and do not involve any cause of action created by Title 11 fall into the residual category of <u>non-core</u> proceedings.** *Windsor Communications Group, Inc. v. Grant* (1985) 75 B.R. 713.

The fact that Mr. Henderson's claims are non-core is further emphasized by the ORS 31.230 law **which requires** a new original action after the Bankruptcy court and adversarial proceedings have concluded.

Indeed, the entire substance of the *Stern v. Marshall* (2011) 564 US 462, decision was that state court claims such as ORS 31.230 could not be finally decided by Bankruptcy judges.

16-bk-33185            Response Brief –                                pg. 5

In the remaining IIED claims (which are solely IIED claims) there is no Title 11 basis for relief. The only basis for relief arises under Oregon law ORS 31.230; it is a state claim, not amenable to final Bankruptcy adjudication.

Judge McKittrick's jurisdiction over the parties to this case must completely conclude, before Oregon state jurisdiction accrues.

a. *<u>Judge McKittrick's Usurption of District Court's Statutory Power</u>*

28 USC § 157(b)(5) mandates the District Court to "order that personal injury tort …….. shall be tried in the district court."

There is **no** provision in the rules for the Bankruptcy judge to make a personal injury recommendation regarding any matter. Therefore, the **<u>intent of the rule must be</u>** that the District judge also be the one to make the personal injury decision.

Here, Judge McKittrick's inquiry as to whether ORS 31.270 and IIED claims are personal injury are *ultra vires* to his authority and beyond the core proceeding inquiry authority granted him under 28 USC § 157.

**5. Mr. Henderson's Reliance on Economic Award is Now Erroneous**

When Mr. Henderson wrote his brief, he had not yet received his lavish attorney fees award. And so, he attempts to mask the very clear personal injury nature of IIED behind the façade that his claims are mostly

16-bk-33185    Response Brief –    pg. 6

for economic loss. See for example (DE 887, p. 5, last paragraph):

> ```
> The non-economic portion of Creditors' WUCP claim, which is
> incidental to the primary claim for attorney fees, does not
> change the claim to a "personal injury tort claim."
> ```

Now, that the economic claims have been resolved, this line of reasoning, that economic claims trump personal injury claims, is no longer a relevant or viable factor in Henderson's analysis.

Thus, examining all of Mr. Henderson's reasoning at (DE 887, p.6) all of the conclusions based on the economic component supporting IIED claims fall away and leave IIED as the sole object of analysis.

For example: *In re Residential Capital, LLC*, (2014) 536 B.R. 566, the removal of the foreclosure from consideration leaves the IIED as the sole claim. And, as Mr. Henderson aptly states (DE 887, p.6):

> ```
> [I]f an IIED claim is the tail wagging the dog, section
> 157(b)(5) should not require dislodging the claim from
> bankruptcy court resolution of a portion of a claim asserted
> against a debtor. If the IIED claim is the gravamen of the
> claim, section 157(b)(5) does not permit the bankruptcy court
> to try the claim absent consent.
> ```

With resolution of attorneys' fees and costs, **IIED has become the sole gravamen of the claim**, and, as Mr. Henderson emphatically states: " § 157(b)(5) does not permit the Bankruptcy court to try the claim absent consent."[1]

---

1. *As the court is very well aware, Peter Szanto has withdrawn from this Bankruptcy (DE 870) and does not consent to further proceedings in the Bankruptcy court of any type or form. All proceedings are involuntary!!*

16-bk-33185                Response Brief –                                pg. 7

### b. 9th Circuit Has REJECTED IIED Physical Trauma Requirements

Approximately ½ of Mr. Henderson's brief relies on *In re Gawker Media LLC*, (2017) 571 B.R. 612. That reliance is wholly misguided and erroneous based on at least 4 distinct, unwaiable and powerful reasons.

1st, *Gawker* was grounded in the torts of defamation, false light and injurious falsehood. Those torts are compensable *per se* on proof of injury. The ORS 31.230(1) metric requires merely demonstration of expenditures for defense of the original action.

Specifically then, the IIED claim now stands alone, because there has already been an award for attorneys' fees. The metric now becomes whether the trier of fact can actually differentiate between the $500,000 already awarded for emotional distress and whether some additional emotional distress exists to justify a further award.

2nd, Mr. Henderson at (DE 887, p.5) makes the conclusion without facts that:

> Applying the narrow view here, it is readily apparent that the WUCP claim does not fall within the definition of "personal injury torts" under section 157.

How, why, and for what reason "it is readily apparent" is not explained – it is merely conclusion without any basis in reality or logical justification.

In fact, what Mr. Henderson seeks, unsuccessfully, is to equate the

16-bk-33185           Response Brief –           pg. 8

notion that a WUCP claim can only be sustained if there is some other type of harm. The reason Mr. Henderson cannot make the connection is because the ORS 31.230 statute limits itself to "expense and other consequences normally associated with defending against unfounded legal claims."

Emotional distress as a consequence of defending against legal claims is unique to Judge McKittrick's court!! Such $500,000 of judicial beneficence has yet to happen in any other court in the United States and likely no where else on planet earth.

As a preview of the balance of this analysis, it is important to remember that Mr. Henderson's effort to convince himself that IIED is not personal injury will miraculously flip-flop to his own – 180' - opposite view in a few paragraphs (DE 887, p.7, discussed *infra*).

3rd, *Gawker* p.620, attempts to differentiate between emotional injury that is personal injury and emotional injury that is not personal injury and concludes (like Mr. Henderson without any basis in fact) that:

> **The 'narrow view' requires a trauma or bodily injury or psychiatric impairment beyond mere shame or humiliation to meet the definition of "personal injury tort."**

Of course, *Gawker*, a New York City case cannot define how harsh, intense or what-sort of emotional injury will meet the threshold to be defined as personal injury. As matters of fact and law, *Gawker* can offer no support to anything in the present case on the subject of IIED, because IIED is never even addressed. *Gawker's* claims of defamation, false light

16-bk-33185    Response Brief –    pg. 9

and injurious falsehood limit themselves to "emotional injury" and never addresses what is the actual requirement of the court's (DE 877) order: emotional distress. (Remember, Judge McKittrick does not acknowledge functional equivalency and a request to brief IIED is not a functionally equivalency approval or request to brief "emotional injury.")

Emotional injury as analyzed by *Gawker* fails to assist this court, because *Gawker* – not even once – does not address what is essential issue in this case: whether there was cognizable infliction or trauma and whether or not such was intentional and distressing.

4th, examining the key 9th Circuit case, the very best analysis of assessing "personal injury to an individual" can be much more clearly understood not to be restricted to bodily injury resulting in physical trauma to the exclusion of non-physical injuries. *B.B. v. Grossman (In re Grossman)*, (9th Circuit, 2015) 538 B.R. 34, 41 accord *Adams v. Adams (In re Adams)*, (2012) 478 B.R. 476, 485-88.

This correct assessment comports with the realization that the fact of personal injury need not be physically visible. And in cases, as here, the assessment of personal injury must be part of the claim's analysis before any final decision by the District court.

The differentiation of psychological events as personal injury must not be made before the facts are known and understood. For that reason, this court is bound to defer to the safety of caution and allow the district court to asses matters which are likely personal injury within the meaning of 28 USC 157(b)(5).

To do otherwise would deprive Peter Szanto of further essential and fundamental *Constitutional* rights to fair and impartial adjudication!!

## 6. ORS 31.270 is Limited to Normal Consequences of Defense

The limitation to recovery under Oregon's WUCP law is limited by the statute itself to "the expense and other consequences normally associated with defending against unfounded legal claims."

Mr. Henderson confirms this (DE 887, p. 7):

```
Creditors have not found any case law standing for the
proposition that a claim satisfying the IIED elements set
forth above cannot be pursued if the wrongful conduct stems
from judicial proceedings. Instead, Oregon case law contains
examples of cases in which IIED claims are based on conduct
that included judicial proceedings.
```

Thereafter, Mr. Henderson makes incorrect representations about the *Checkley v. Boyd*, (2000) 170 Or. App. 721 action. The case was not reversed in part based on lack of merit, but rather allowed further to proceed in the trial court (*ibid* 744), so as fully to try the IIED claims.

After remand the *Checkley* dispute continued. In *Checkley v. Boyd*, (2005) 198 Or. App. 110, the wrongful use of civil process claims were dismissed, but the IIED claims were remanded for yet further adjudication.

16-bk-33185 Response Brief – pg. 11

Based on the decision in *Checkley*, the correct analysis of the manner in which this case should proceed is precisely as per statute:

1) final conclusion of the Bankruptcy and / or adversarial proceeding.
2) commencement of a new original action in a forum of general jurisdiction which is not constrained by limitations to adjudicate personal injury claims.

## 7. **Conclusion**

The court must prioritize the various aspects of this case with which the law requires compliance:

a) final adjudication of the underlying proceeding which allegedly used process wrongfully
b) a new original proceeding in a court of general jurisdiction
c) determination of personal injury as causing emotional distress under the ORS 31.230 law.

Respectfully,

Dated 4/2/2020  /s/ *signed electronically* Peter Szanto

16-bk-33185 Response Brief –  pg. 12

# PROOF of SERVICE

My name is Maquisha Reynolds, I am over 21 years of age and not a party to the within action. My business address is PO Box 14894, Irvine CA 92623

On the date indicated below, I personally served the within:

## RESPONSE BRIEF

on the following by placing in postage pre-paid envelopes of the within document and mailing same:

a. Internal Revenue Service, PO Box 7346, Philadelphia PA 19101
b. First Service Residential, 15241 Laguna Canyon Rd, Irvine CA 92618
c. JPMorgan Chase Bank, represented by:
      Gadi Shahak c/o Shapiro & Sutherland
      1499 SE Tech Center Place, Suite 255 , Vancouver, WA 98683
d. Bank of America, c/o McCarthy & Holthus 920 SW 3rd Av., Portland OR 97204
e. Oregon Department of Revenue, 955 Center St., Salem OR 97301
f. Chapter 7 Trustee, C. Amborn, PO Box 580, Medford OR 97502
g. Susan Szanto - 11 Shore Pine, Newport Beach CA 92657
h. Office of the US Trustee, 620 SW Main Street, Suite 213, Portland, OR 97205
by mailing copies to the above parties *via* 1st class mail, postage prepaid, or by e-mail.
i. Danny Ong, 9 Straits View #06-07, Marina One West Tower Singapore 018937

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Signed at Irvine CA.

Dated 4/2/ 2020    /s/ *signed electronically* M. Reynolds

16-bk-33185      Response Brief –      pg. 13