DISTRICT OF OREGON
**F I L E D**
**May 07, 2021**
**Clerk, U.S. Bankruptcy Court**

Below is an opinion of the court.

_____
PETER C. McKITTRICK
U.S. Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF OREGON

In Re:                          )
                                ) Bankruptcy Case No.
PETER SZANTO,                   ) 16-33185-pcm7
                                )
                                ) MEMORANDUM OPINION[1]
                                )
                                )
              Debtor.           )
_____)

The purpose of this memorandum is to rule on four applications for compensation (referred to collectively as the Applications) filed in the above captioned case. The Applications fall into two categories: (1) the chapter 7 trustee seeks compensation for services rendered in her capacity as a trustee, Doc. 1106, and (2) three law firms seek compensation for legal services rendered as counsel to the trustee. Docs. 1104 and 1107, and Claim 15. Debtor objected to the Applications

---

[1] This disposition is specific to this case and is not intended for publication or to have a controlling effect on other cases. It may, however, be cited for whatever persuasive value it may have.

Page 1 - MEMORANDUM OPINION

(the Objection).[2]  Doc. 1127.  After considering the Applications and the Objection, the court determines that a hearing is not necessary.  LBR 7007-1(d)(1), made applicable to contested matters by LBR 9013-1(a)(7). See also In re Wolverine, Proctor & Schwartz, LLC, 527 B.R. 809, 822 (D. Mass. 2015)(fee objections may be heard on the papers where, as here, the parties had a fair opportunity to offer relevant facts and arguments to the court and confront their adversaries' submissions).

I.  Chapter 7 Trustee's Application for Interim Compensation[3]

Candace Amborn, the chapter 7 trustee (the Trustee), seeks interim compensation in the form of a commission of $20,000 and expenses of $17 for a total of $20,017.  Doc. 1106.

A chapter 7 trustee's application for a commission that is within the maximum amount permitted by § 326(a) is presumptively reasonable absent extraordinary circumstances.  In re Salgado-Nava, 473 B.R. 911, 921 (9th Cir. BAP 2012).  The court finds that the amount sought by the Trustee is within the maximum amount permitted by § 326(a), taking into account the commission allowed to the previous chapter 7 trustee.  See Doc. 1106, Schedule C.  Debtor does not address the applicable standard under § 326(a), but to the extent the arguments raised by Debtor in the Objection can be construed to allege that extraordinary circumstances

---

[2] The Objection does not comply with LBR 9004-1(a) because many pages are single-spaced and it is more than 20 pages long. The court will waive the requirements of LBR 9004-1 in this instance and accept the Objection as filed. In the future, all filings that do not comply with LBR 9004-1 will be summarily denied.

[3] Interim compensation awards do not constitute a final adjudication on the question of compensation.  In re Strand, 375 F.3d 854, 858 (9th Cir. 2004).

Page 2 -   MEMORANDUM OPINION

exist warranting the denial of the Trustee's commission under § 326, the court rejects any such argument and finds that no extraordinary circumstances exist that would make an interim award to the Trustee unreasonable.

The court will prepare and enter an order allowing the Trustee's application for interim compensation in the amount of $20,017.

II. <u>Law Firm Applications for Compensation</u>

The following three law firms (the Firms) have filed applications for compensation for legal services rendered to the Trustee:

A. Jordan Ramis PC (Jordan Ramis) seeks a total of $192,858.35 in interim compensation ($192,764 in fees and expenses of $94.35) for the period of time between February 26, 2019, and December 31, 2020. Doc. 1104.

B. Rajah & Tann Singapore LLP (Rajah & Tann) seeks a total of $62,629.31 in interim compensation ($61,248.51 in fees and expenses of $1,380.80) for the period of time between June 25, 2019, and December 31, 2020. Doc. 1107.

C. Lane Powell PC (Lane Powell) seeks a total of $14,551.88 in final compensation ($14,535 in fees and expenses of $16.88) for the period of time between January 27, 2020, and February 9, 2021. Claim 15.

Section 330(a) allows the court to award "reasonable compensation for actual, necessary services rendered by the trustee . . . or attorney and by any paraprofessional person employed by any such person," as well as "reimbursement for actual, necessary expenses." § 330(a)(1)(A),(B). In determining whether compensation is reasonable, courts take into

Page 3 - MEMORANDUM OPINION

consideration the nature, extent, and value of such services, taking into account all relevant factors, including the six specifically enumerated factors set forth in § 330(a)(3)(A)-(F). The court may not allow compensation for "unnecessary duplication of services" or services that were not "reasonably likely to benefit the debtor's estate" or "necessary to the administration of the estate." § 330(a)(4)(A). Section 331 permits the court to allow and disburse to a professional interim compensation no more than every 120 days. The standards set forth in § 330 apply to interim compensation requests. 3 COLLIER ON BANKRUPTCY ¶ 331.02[4] (Richard Levin & Henry J. Sommer eds., 16th ed.).

A party objecting to an award of fees has the burden to show that the fees are unreasonable. In re Koncicky, 2007 WL 7540997, *4 (9th Cir. BAP 2007). An objecting party must do more than express general dissatisfaction with the fee application; he must specify what tasks are objectionable. 3 COLLIER ON BANKRUPTCY ¶ 330.03[5][d].

The court has an independent duty to examine fees for reasonableness. 3 COLLIER ON BANKRUPTCY ¶ 330.03[5][e]. As is required, the Firms each attached schedules A and C to the Applications. The court carefully reviewed the Applications, the narrative summaries attached as Schedule A, and each entry contained in the detailed billing statements attached as Schedule C. Before turning to each of the Firm's applications, the court will address two "global" objections raised by Debtor.

First, Debtor contends that the Applications are not within this court's jurisdiction to the extent the Firms rendered services in connection with appeals or proceedings in other courts. Debtor is

Page 4 - MEMORANDUM OPINION

mistaken.

This court has jurisdiction to decide the Applications pursuant to 28 U.S.C. §§ 157(a) and 1334(a) and (b), and Local Rule 2100-2(a) of the United States District Court for the District of Oregon (the District Court) pursuant to which the District Court referred "all cases under title 11 and all proceedings arising under title 11 or arising in or related to a case under title 11" to this court. An application for allowance of professional fees is a core proceeding which this court may hear and determine as provided in 28 U.S.C. § 157(b)(2)(A) and (O). In re Lawson, 156 B.R. 43, 45 (9th Cir. BAP 1993).

Debtor argues that the filing of various notices of appeal divested this court of jurisdiction to decide the Applications because "[t]here is no authority which holds that a Bankruptcy court retains jurisdiction over any matter after an Appeal has been perfected." Doc. 1127, p. 22. Debtor is wrong. The rule that a notice of appeal divests a trial court of jurisdiction is not absolute. In re Rains, 428 F.3d 893, 904 (9th Cir. 2005). Although a bankruptcy court may not significantly alter or expand upon the terms of an order on appeal, absent a stay, the bankruptcy court retains jurisdiction to enforce or act in conformance with an order that has been appealed. In re Houshang Dardashti, 2008 Bankr. LEXIS 4678, *14-16 (9th Cir BAP February 12, 2008). By addressing the Applications, the court will not significantly alter or expand upon the terms of any order on appeal. The cases cited by Debtor in the Objection do not support his contention that this court lacks jurisdiction to decide the Applications. None of the cases involve applications for professional compensation in a bankruptcy case.

Page 5 - MEMORANDUM OPINION

Moreover, one of the cases, Kusay v. United States, 62 F.3d 192 (7th Cir. 1995), actually undermines Debtor's position because it states that there are exceptions to the rule that the filing of a notice of appeal divests a trial court of jurisdiction, including that a trial court "may award attorneys' fees while the merits are on appeal[.]" 62 F.3d at 194.

Second, Debtor argues that fees should be denied in connection with various adversary proceedings and contested matters because he was not a party to those proceedings. Debtor's argument is without merit.

A trustee may employ a professional "to represent or assist the trustee in carrying out the trustee's duties under" the Bankruptcy Code. § 327(a). Among other things, a chapter 7 trustee is charged with collecting and reducing to money property of the estate, investigating a debtor's financial affairs, and examining proofs of claim and objecting to improper claims. § 704(a). Professional services that support a trustee in fulfilling her responsibility to "conserve and advance the interests of the estate" are compensable. 3 COLLIER ON BANKRUPTCY ¶ 330.03[1]. The Bankruptcy Code does not require that a debtor be a party to a proceeding for a professional to be entitled to compensation. Despite Debtor's unsupported statements to the contrary, the Bankruptcy Code allows professional compensation in connection with proceedings in non-bankruptcy courts. Professionals routinely assist chapter 7 trustees in other forums.

The Objection is replete with false statements and Debtor grossly misrepresents the history of this bankruptcy case throughout the

Page 6 - MEMORANDUM OPINION

Objection.[4] The court has considered all the arguments raised by Debtor in the Objection. The court has already addressed and rejected many of those arguments in earlier orders. For the reasons stated in previous orders, those arguments are rejected now as well. Any remaining arguments made by Debtor in the Objection that are not specifically addressed in previous orders or this memorandum are irrelevant, frivolous, and/or without merit.

### A. Jordan Ramis Interim Application

Many, if not most, of Debtor's objections are grounded in an assertion that all the legal services provided by Jordan Ramis should be disallowed because they are fabricated solely to "expropriate," estate property. The court categorically rejects that argument. The five-year anniversary of this bankruptcy case is approaching. The main case docket has over 1100 entries and that does not include lengthy dockets in multiple adversary proceedings and appeals. Almost all of the legal fees incurred in this case are directly related to, and the result of, Debtor's own actions. Debtor has filed countless meritless motions to which the Trustee has been required to respond. For example, Debtor argues that the court should disallow all fees incurred in connection with a motion for contempt Debtor filed against the Trustee and Jordan Ramis attorneys based on allegations that they failed to reimburse him $63.32 in expenses (Debtor's Contempt Motion). Doc. 1116. Debtor

---

[4] For example, Debtor states that a claim asserted by his wife that is now on appeal at the District Court sought the return of her alleged separate property. That is not true. Debtor's wife asserted an interest in alleged community, not separate, property, in the claim. See Claim 14.

Page 7 - MEMORANDUM OPINION

sought, among other things, $1 million in damages for the alleged failure, an amount that is grossly disproportionate to the alleged offense. Moreover, Debtor entirely ignores the fact that the court found that the Trustee had, in fact, reimbursed him as ordered based on evidence provided by the Trustee. See Doc. 1130, p. 3. Despite the fact that Debtor's Contempt Motion was a frivolous abuse of process, the Trustee was forced to respond to it and incurred fees as a result. In opposing Debtor's Contempt Motion, Mr. Blacklidge, provided a declaration stating that "[o]n at least one occasion in the past, Mr. Szanto informed me that he intended to file as much as possible to create cost and expense to the estate so none of the creditors, in particular, his siblings, receive any money." Doc. 1126-2, p. 2.

Debtor has opposed virtually everything the Trustee has done in this case, including, most prominently, his extensive efforts to thwart the Trustee's attempts to recover estate property transferred by Debtor in violation of this court's orders. As will be discussed in more detail below, the court has found, on multiple occasions, that Debtor transferred estate property to Singapore. Nevertheless, Debtor argues in the Objection that all fees and costs related to the Trustee's efforts to recover estate property in Singapore should be disallowed as unreasonable and unnecessary for various reasons, including that the transferred funds are not estate property despite the court's multiple determinations otherwise. None of Debtor's arguments for disallowance of the Jordan Ramis fees is grounded in fact or law. The court overrules Debtor's

Page 8 - MEMORANDUM OPINION

objections to the Jordan Ramis application.[5]

Based the court's independent review, a fee reduction in the amount of $7,659 is warranted. In considering the applicable standard and the factors set forth in § 330(a)(3), the court finds that the fee request is otherwise reasonable and should be allowed. In coming to that conclusion, the court has considered the time spent on this matter by Jordan Ramis's attorneys and staff, the benefit to the estate and the necessity of the services provided.

The court will disallow .2 hours ($74) charged by RLS on 6/14/2019 for an interoffice conference. The court also will disallow .3 hours ($111) charged by RDG on 7/24/2019 because the description for that task is too vague to permit meaningful review. The balance of the reductions, which total $7,474, will be disallowed because the services rendered are not compensable under the rule announced in Baker Botts LLP v. ASARCO LLC, 576 U.S. 121 (2015).[6] In that case, the Supreme Court held that although bankruptcy professionals are entitled to be compensated for

---

[5] Debtor objects to fees incurred in connection with his appeal of an earlier interim fee application by Williams Kastner, the Trustee's former counsel. For the reasons explained below, the court will disallow those fees, but not for the reasons stated by Debtor.

[6] This reduction is comprised of all entries identified as relating to "Appeal of Williams Kastner Compensation Order 19-1039," which total $6,549, and the following entries:

| Timekeeper | Date | Entry | Deduction | $ Deduction |
|---|---|---|---|---|
| GLB | 4/29/2019 | 1.1 | 1.1 | $407 |
| GLB | 5/1/2019 | 1.5 | 0.5 | $185 |
| GLB | 5/2/2019 | 0.3 | 0.3 | $111 |
| GLB | 5/6/2019 | 0.3 | 0.2 | $74 |
| GLB | 3/31/2020 | 1.3 | 0.3 | $111 |
| GLB | 4/16/2020 | 0.1 | 0.1 | $37 |

Page 9 - MEMORANDUM OPINION

preparing an application for compensation, the defense of a compensation application is not compensable.[7] Jordan Ramis may renew its request for those fees upon final application, but will be required to demonstrate that allowance of the fees is consistent with Baker Botts.

For the reasons stated above, interim fees will be allowed to Jordan Ramis in the amount of $185,105 and the requested expenses will be allowed in the amount of $94.35, for a total of $185,199.35. The court will prepare and enter the order.

B. Rajah & Tann Interim Application

Around the time this case was converted from chapter 11 to chapter 7 in December of 2017, Debtor made numerous transfers of estate assets in violation of the Bankruptcy Code and orders of this court. Included among those transfers were transfers of significant funds to Singapore. In October of 2018, the court entered an order granting a motion for contempt filed by the Trustee (the First Contempt Order). Doc. 590. The First Contempt Order, among other things, required Debtor to sign and deliver to the Trustee forms for HSBC Singapore (the Forms) that would permit the release of information to the Trustee and authorize the turnover "to the Trustee [of] all funds in all bank and/or financial accounts with your institution in my name solely, [or] jointly with another." Doc. 590. In December of 2018, the court approved the Trustee's application to employ Rajah & Tann to assist the Trustee in

---

[7] The Supreme Court observed in Baker Botts that the remedy for having to defend against a frivolous objection to a fee application was available under Fed. R. Bankr. P. 9011. 576 U.S. at 134 n. 4. Fed. R. Bankr. P. 8020 provides a similar remedy in connection with the filing of a frivolous appeal.

Page 10 - MEMORANDUM OPINION

domesticating and/or registering the First Contempt Order in Singapore. Doc. 625. Since then, the court has addressed and rejected multiple attacks on Rajah & Tann's employment by Debtor, see, e.g., Docs. 651, 734, 896, and approved a previous interim fee application filed by Rajah & Tann in an order dated April 6, 2020. Doc. 954.

In January of this year, the court entered a second contempt order (the Second Contempt Order) against Debtor based on his refusal to sign the Forms as required in the First Contempt Order. Doc. 1058. On February 25, 2021, the court entered a third contempt order against Debtor based on his refusal to comply with the First and Second Contempt Orders, Doc. 1088, and issued a warrant for Debtor's arrest. Doc. 1089. Debtor then signed the Forms, but has continued to resist the Trustee's efforts to recover, on behalf of the bankruptcy estate, the funds Debtor transferred to Singapore.

Debtor raises numerous issues concerning the propriety of Rajah & Tann's actions before the Singapore court and the validity of the Singapore court's decisions. The court has addressed and rejected those arguments numerous times. For example, Debtor complains that he was denied notice and an opportunity to be heard by the Singapore court because he has never been served with any paper or pleading filed in that court. The court has explained to Debtor on numerous occasions that it will not interfere with, and has no authority to review the propriety of, court proceedings in Singapore. See, e.g., Doc. 954. If Debtor believes he has been denied due process in connection with the legal proceedings in Singapore, or that the court in Singapore otherwise erred in its decisions, he must seek relief from the courts in Singapore rather than

Page 11 - MEMORANDUM OPINION

trying to collaterally attack those decisions in this court.  Moreover, the court finds it difficult to believe that Debtor has been denied due process in Singapore given the extensive documentation of Debtor's activities in Singapore that are included in Rajah & Tann's application[8] and that Debtor himself has testified that he has extensively participated in those proceedings, both in-person and by telephone.  See Adv. P. 18-3022-pcm, Doc. 288, p. 30.  Debtor argues that Rajah & Tann is not entitled to compensation because its attorneys are not licensed to practice law in Oregon.  The court has rejected that argument multiple times.  See, e.g., Docs. 734, 1125.  Debtor argues that Rajah & Tann waived their right to fees, citing a document directed to the court in Singapore, which is attached as Exhibit C to the Objection.  Debtor's waiver argument is especially frivolous because Exhibit C clearly states Rajah & Tann's intent to seek compensation from this court.

According to Debtor, all of the fees incurred in connection with the litigation in Singapore should be disallowed because that litigation was entirely unnecessary.  The court emphatically rejects Debtor's argument. The Trustee required the assistance of Singapore Counsel to obtain information about and recover estate funds Debtor transferred to Singapore in violation of this court's orders.  Rajah & Tann's services are directly and solely attributable to Debtor's misconduct in this case. Indeed, the court determined that Debtor's ongoing refusal to obey the First Contempt Order was a basis to deny his discharge under §

---

[8] In addition to the required Schedules A and C, Rajah & Tann supplied the court with approximately 1,000 pages of documents from the Singapore litigation, all of which the court has reviewed, in support of its application for compensation.

Page 12 - MEMORANDUM OPINION

727(a)(6)(A), see Adv. P. 18-3022-pcm, Doc. 288, pp. 28-31, and the Bankruptcy Appellate Panel for the Ninth Circuit has affirmed that decision. See In re Peter Szanto, BAP No. OR-20-1106-TLB, Doc. 41, p. 11.

The court overrules Debtor's objections to the Rajah & Tann application.

Based on the court's independent review, a fee reduction in the amount of $831.17 is warranted.[9] In considering the applicable standard and the factors set forth in § 330(a)(3), the court finds that the fee request is otherwise reasonable and should be allowed. In coming to that conclusion, the court has considered the time spent on this matter by the Rajah & Tann's attorneys and staff, the benefit to the estate and the necessity of the services provided.

The court will reduce the fees requested as detailed below for interoffice conferences (IOC):

| Timekeeper | Date | Entry | Deduction | | $ Deduction |
|---|---|---|---|---|---|
| DOW | 6/9/2019 | 0.2 | 0.2 | IOC | $170 |
| YWJ | 2/12/2019 | 0.5 | 0.3 | IOC | $210 |
| YWJ | 9/12/2019 | 1 | 0.3 | IOC | $210 |
| DOW | 17/1/20 | 0.3 | 0.1 | IOC | $85 |
| YWJ | 30/1/20 | 2 | 0.5 | IOC | $350 |
| CMC | 30/1/20 | 2.8 | 0.5 | IOC | $160 |

Therefore, interim fees will be allowed to Rajah & Tann in the amount of $60,417.34 and the requested expenses will be allowed in the amount of $1,380.80, for a total of $61,798.14. The court will prepare and enter the order.

---

[9] The amount of the reduction in Singapore currency was $1,185. The court applied the 1.4257 exchange rate used by Rajah and Tann in the pertinent invoice. See Schedule C, p. 1.

Page 13 - MEMORANDUM OPINION

C. <u>Lane Powell Final Application</u>

The court approved the Trustee's employment of David W. Criswell of Lane Powell in an order entered on January 30, 2020. Doc. 886. As Debtor states in the Objection, Mr. Criswell, an attorney at Lane Powell, prepared an expert report on United States bankruptcy law at the request of the Singapore court. That report is included in the materials provided by Rajah & Tann in connection with its application. Debtor argues that Lane Powell is entitled to compensation only from the Singapore court. The court rejects that argument. For the reasons discussed above, this is the proper court in which Lane Powell should seek compensation.

In accordance with LBR 2016-1(c)(2)(A), Lane Powell filed its application for final compensation as a proof of claim in this bankruptcy case. Debtor argues that Lane Powell is not entitled to any compensation because the claim is untimely. Debtor is mistaken. The general deadline for filing prepetition claims does not apply to a postpetition administrative expense claim, and Lane Powell timely filed its claim. <u>See</u> LBR 2016-1(c)(2)(C)(I) (application for final compensation in chapter 7 case must be filed by the date the trustee's final report is filed). Debtor argues that the Lane Powell application "is replete with non-existent garbage charges for copies and court documents." Doc. 1127, p. 19. Debtor is required to, but does not, identify the particular charge to which he objects and the basis for that objection. Merely labeling a charge as "garbage" does not suffice. Moreover, the costs sought by Lane Powell total only $16.88, an amount the court finds reasonable upon its independent review. Debtor argues that the amount charged for

Page 14 - MEMORANDUM OPINION

preparation of the application for compensation should be disallowed because the court did not separately approve the employment of the Lane Powell associate attorney who prepared the application. The court rejects that argument. Pursuant to Fed. R. Bankr. P. 2014(b), no separate order authorizing the employment of associates of Lane Powell is required. Moreover, the court notes that the attorney who prepared the Lane Powell application for compensation bills at a lower hourly rate than Mr. Criswell, thus conserving estate assets.

The court overrules Debtor's objections to the Lane Powell application.

Based on the court's independent review, the fees and expenses requested by Lane Powell will be allowed. In considering the applicable standard and the factors set forth in § 330(a)(3), the court finds that the fee request is reasonable and should be allowed. In coming to that conclusion, the court has considered the time spent on this matter by Lane Powell's attorneys and staff, the benefit to the estate and the necessity of the services provided.

Therefore, final fees will be allowed to Lane Powell in the amount of $14,535 and the requested expenses will be allowed in the amount of $16.88, for a total of $14,551.88. The court will prepare and enter the order.

III. <u>Debtor's Demand for Additional Time To Conduct Discovery</u>

Before the deadline for filing objections to the Applications, Debtor filed, and the court denied, a motion for an extension of that deadline in an order entered on March 22, 2021. Doc. 1122. Debtor timely filed the Objection, but at the end of that document, made another

Page 15 - MEMORANDUM OPINION

demand for more time to assert additional objections based, in part, on his desire to conduct discovery.  Specifically, Debtor demanded "access to Jordan Ramis' books, records and papers so to be able to fully asses [sic] and understand the bookkeeping, record keeping process whereby $300,000 of unconscionable fees was crafted out of thin air and the imaginations of the Trustee."  Doc. 1127, p. 23.

Soon after Debtor filed the Objection, he filed two documents as correspondence, saying that he needed additional time to subpoena Trustee records, and requesting the issuance of four subpoenas.  Docs. 1131, 1132.  On April 8, 2021, the court entered an Order Regarding Correspondence, Doc. 1135, in which it again denied Debtor's request for an extension of time and directed that no subpoenas be issued.  The court stated, among other things, that because it had denied Debtor's request for an extension of time to object to the Applications, "issuance of subpoenas would serve no purpose and would only result in a waste of judicial and estate resources."  Doc. 1135. P. 5.  However, the court also stated that it might revisit that decision upon final review of the Applications.  The court has concluded its final review of the Applications, and reaffirms that discovery is unnecessary.

A bankruptcy court is obligated to compare a fee application
> with the files and records in the case and with the court's own knowledge of the case in determining the legality and reasonableness of any proposed award.  "A judge is presumed knowledgeable as to the fees charged by attorneys in general and as to the quality of legal work presented to him [or her] by particular attorneys; these presumptions obviate the need for expert testimony such as might establish the value of services rendered by doctors or engineers."  <u>Lindy Bros. Builders of Phila. v. American R&S San. Corp.</u>, 487 F.2d 161, 169 (3d Cir. 1973).

<u>In re Davison</u>, 79 B.R. 859, 860 (Bankr. W.D. Mo. 1987).  <u>See also</u> <u>In re</u>

Erewhon, Inc., 21 B.R. 79, 82 (Bankr. D. Mass. 1982)(trial court makes fee determination based on, among other things, its own general experience, difficulty of case, and court's observations in the actual case before it).

The court rejects the foundational basis upon which Debtor bases his request for discovery, i.e., that the services provided by the Firms were entirely unnecessary and attributable to nothing more that a nefarious plan to generate fees. The court has presided over this bankruptcy case and the related adversary proceedings for almost five years. The tasks and services detailed in the Applications are without question related to and consistent with the extreme and unfortunate realities of this case. Moreover, as stated, almost all of the legal fees incurred in this case are directly related to, and the result of, Debtor's own actions. No discovery is necessary for the court to make that determination or to evaluate the Applications. Although some of the services were rendered in connection with proceedings in other courts, this court can evaluate whether the associated charges are reasonable and necessary based on its familiarity with the case, an examination of the dockets in the related appeals, and the voluminous materials submitted in connection with the Applications.

###

cc: Peter Szanto (via ECF)
    Chapter 7 Trustee (via ECF)
    Gary Blacklidge (via ECF)

Page 17 - MEMORANDUM OPINION